J-S44027-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ADOPTION OF J'L.M.O. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.M.O., NATURAL | : | |
| MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 530 WDA 2019 |

Appeal from the Decree Entered March 22, 2019
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
133 In Adoption 2018

BEFORE:  SHOGAN, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED OCTOBER 18, 2019**

J.M.O. ("Mother") appeals from the decree terminating her parental rights to J'L.M.O. ("Child"). Counsel has filed a petition to withdraw as counsel and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). We conclude the trial court did not abuse its discretion in terminating Mother's parental rights and agree with counsel that Mother's appeal is wholly frivolous. We therefore grant counsel's petition to withdraw and affirm the trial court decree.

Child was born in September 2017, and suffered from drug withdrawal symptoms at birth. The court entered an emergency protective order for Child, and, after a shelter care hearing, the court found that it would not be in Child's best interest to return to Mother at that time. In October 2017, the trial court adjudicated Child dependent. Mother stipulated to the adjudication of dependency. The grounds for the adjudication included, among other things,

that Mother had a severe drug addiction that affected her ability to safely parent Child, and Mother had reported her use of cocaine and illegally-obtained Vicodin; Mother tested positive for cocaine and opiates at the time of Child's birth and Child suffered from withdrawal symptoms; the Erie County Office of Children and Youth ("OCY") had significant concerns regarding Mother's ability to safely parent Child as she was observed to be under the influence of narcotics and incoherent, and hospital staff had to remove Child from Mother's room due to safety concerns. Trial Court Opinion, filed May 10, 2019, at 1-2 ("1925(a) Op.").

Mother had the following permanency plan goals:

1. Participate in a drug and alcohol assessment with the inclusion of information from the ongoing and intake caseworkers and follow all recommendations;

2. Refrain from the use of drugs and/or alcohol and submit to random urinalysis testing through the color code system at the Esper Treatment Center;

3. Obtain and/or maintain gainful employment to ensure that she can meet the basic needs of [Child] and provide proof of such income;

4. Participate in a parenting program that addresses . . . [Child's] needs and incorporate these parenting concepts during visitation;

5. Provide the name and pertinent information for any and all household members on an ongoing basis to ensure that the household members are appropriate and safe to be around children;

6. Sign any and all releases of information as requested by the Agency regarding [Child];

7. Sign any and all releases of information as requested by the Agency regarding past, current and future drug and

alcohol treatment, mental health treatment and medical treatment for herself;

8. Cooperate with providing information regarding the paternity of [Child];

9. Attend all medical appointments for [Child]; and

10. Participate in a mental health assessment and participate in any recommendation.

*Id.* at 2-3.

In December 2018, OCY filed a petition to terminate Mother's parental rights to Child. At a hearing, the case supervisor, Lisa Langer, testified that between October 2017 and October 2018, Mother had failed to show for 123 urine tests and had tested positive for narcotics five times. N.T., 3/7/19, at 12. At the July 2018 permanency review hearing, the court had told Mother she needed to be 100% compliant with the treatment plan by October 2018. *Id.* Mother, however, tested positive for cocaine in August 2018 and had drug-related charges filed against her in September 2018. *Id.* at 12-13. Although Mother spent two weeks in drug treatment, she discharged herself before completion of the program. *Id.* at 13. Further, Mother attended a mental health evaluation, but failed to follow through with the recommended medication and counseling. *Id.* Mother did not attend parenting training and failed to cooperate with OCY, as she did not identify Child's father until June 2018,[1] and did not allow caseworkers to visit her home. *Id.* at 13, 25, 28.

---

[1] The Court also terminated the parental rights of K.H. ("Father"). Father also filed an appeal, which we will address by a memorandum to be filed at Docket No. 565 WDA 2019.

Mother contacted OCY the day before the March 2019 hearing, but, before that, Mother's last contact with OCY was at the October 2018 hearing, and, prior to that, was on August 21, 2018. *Id.* at 18.

Langer testified that when Child was in the neonatal intensive care unit ("NICU"), Mother only visited him two times. *Id.* at 14. After his release, Mother had only one visit with Child, in June 2018. *Id.* Langer further testified that she believed it would be in Child's best interest to terminate Mother's parental rights. *Id.* at 14.

A permanency case worker at OCY, Gaylene Abbott-Fay, testified that the foster home that Child has been in since he was discharged from the hospital is an adoptive resource. *Id.* at 65-66. The foster parents began working with Child prior to his discharge. *Id.* at 67. Child is on track developmentally. *Id.* He has thrived in the foster home and receives the stability, structure, support, and routine he needs. *Id.* at 66-68. Abbott-Fay testified that Child's best interests would be served by terminating Mother's parental rights. *Id.* at 68. She did not believe that terminating Mother's parental rights would detrimentally impact Child. *Id.*

Mother testified at the hearing and agreed that Child was born drug dependent, that she did not appear for drug screens on 123 occasions, and that she did not complete drug treatment or parenting classes. *Id.* at 37-40. She further agreed that she was in the "same, if not worse, condition" than when Child was found dependent. *Id.* at 41.

Following the hearing, the trial court found that OCY established by clear and convincing evidence that grounds for termination existed under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8),[2] and that termination was proper under 23 Pa.C.S.A. § 2511(b).

Mother filed a timely Notice of Appeal. Counsel for Mother raises two issues in her **Anders** brief:

> A. Whether the orphans' court committed an error of law and/or abused its discretion when it concluded that termination of parental rights was supported by clear and convincing evidence pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), [(5), and] (8)?
>
> B. Whether the orphans' court committed an error of law and/or abused its discretion when it concluded that termination of parental rights was supported by clear and convincing evidence pursuant to 23 Pa.C.S.A. § 2511(b)?

**Anders** Br. at 3 (some capitalization and suggested answers omitted).

Before reviewing the merits of this appeal, we must first determine whether counsel has satisfied the requirements for withdrawing as counsel. **See Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*) (stating that "[w]hen faced with a purported **Anders** brief, this Court may not review the merits of any possible underlying issues without first

---

[2] The decree terminating Mother's rights also list Section 2511(a)(4) as a ground for termination. However, the trial court's opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) does not list Section 2511(a)(4) as a ground for termination, and, as Mother's whereabouts were known to the CYS, we conclude the subsection is inapplicable here. **See** 23 Pa.C.S.A. § 2511(a)(4) ("The child is in the custody of an agency, having been found under such circumstances that the identity or whereabouts of the parent is unknown and cannot be ascertained by diligent search and the parent does not claim the child within three months after the child is found.").

examining counsel's request to withdraw"). To withdraw pursuant to **Anders**, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*). Further, in the **Anders** brief, counsel seeking to withdraw must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361. If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." **Id.** at 355, n.5 (citation omitted).

We conclude that counsel has complied with all of the above technical requirements. In her **Anders** brief, counsel has provided a summary of the procedural history and facts of the case. Further, counsel's brief identifies materials in the record that could arguably support the appeal, and includes

counsel's assessment of why those issues are frivolous, with citations to relevant legal authority. In addition, counsel served Mother a copy of the **Anders** brief and advised her of her right to proceed *pro se* or to retain a private attorney to raise any additional points she deemed worthy of this court's review. Petition to Withdraw, 5/17/19, at ¶ 6; Ex. A. Mother has not responded to counsel's petition to withdraw. As we find the technical requirements of **Anders** and **Santiago** are met, we will proceed to the issues on appeal.

When we review termination of parental rights cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." **In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013) (quoting **In re Adoption of S.P.**, 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." **In re Adoption of K.C.**, 199 A.3d 470, 473 (Pa.Super. 2018). We may reverse a trial court decision for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." **In re Adoption of S.P.**, 47 A.3d at 826.

Our Supreme Court has explained the reasons for applying an abuse of discretion standard of review in termination of parental rights cases:

> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate

court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*Id.* at 826-27 (citations omitted).

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence. ***In re Adoption of K.C.***, 199 A.3d at 473. Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." ***Id.*** (quoting ***In re Z.S.W.***, 946 A.2d 726, 728-29 (Pa.Super. 2008)).

Termination of parental rights is controlled by section 2511 of the Adoption Act. ***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007). Under section 2511, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

- 8 -

*Id.* (citations omitted).

To affirm the termination of parental rights, this Court need only agree with the trial court's decision as to any one subsection of section 2511(a), as well as section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). We focus our attention on whether the trial court abused its discretion by terminating Mother's parental rights pursuant to section 2511(a)(1), which provides that a parent's rights to a child may be terminated if:

> [t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1). "With respect to any petition filed pursuant to subsection (a)(1) . . . , the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S.A. § 2511(b).

Pursuant to section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d at 730. The parental obligation is a "positive duty which requires affirmative performance" and "cannot be met by a merely passive interest in the development of the child." *In re C.M.S.*, 832 A.2d 457,

462 (Pa.Super. 2003) (quoting *In re Burns*, 379 A.2d 535 (Pa. 1977)).

Indeed,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004) (citations omitted).

Here, the trial court found that OCY established grounds for termination under Section 2511(a)(1). 1925(a) Op. at 7-8. The Court explained:

> [Child] was born drug exposed due to [Mother's] drug use. The child was in NICU at the hospital for about a month, yet the mother only visited two times, and since his release, [Mother] had one visit in June, 2018 with her son. [Mother] did nothing to learn how to care for [a] child, especially one born under the circumstances as [Child]. Her response to being ordered to undergo drug testing was 123 no-shows and 5 positive results. Her answer as to why she failed to attend testing was "I had trouble with that." Further, ordered to participate in drug therapy, [M]other discharged herself after two weeks. After being told by the Court in July, 2018 that she needed to be 100% compliant with the treatment plan, [Mother] tested positive for cocaine in August. [M]other admitted to attending no parenting training, and never follow[ing] through with mental health therapy and medications recommended by an evaluation. All this failure and/or refusal for a year to abide by the treatment plan devised to help the mother get her son returned evidences a complete lack of desire by [Mother] to perform parental duties. The conditions which led to

> [Child's] placement continue to exist, and in [Mother's] own admission, are worse than October, 2017.

***Id.*** at 7-8.

The record supports the trial court's factual findings and it did not abuse its discretion or err as a matter of law in finding termination proper under Section 2511(a)(1). Mother has not met any of her permanency plan goals, remains addicted to drugs, and visited Child only two times while he was in the NICU and one time since his release from the hospital.

We next address whether the trial court erred in finding termination would best meet Child's developmental, physical and emotional needs and welfare under Section 2511(b).

Under Section 2511(b), the court must consider "the developmental, physical and emotional needs and welfare of the child" to determine if termination of parental rights is in the child's best interest. ***See*** 23 Pa.C.S.A. § 2511(b). The focus under Section 2511(b) is not on the parent, but on the child. ***In re Adoption of R.J.S.***, 901 A.2d 502, 514 (Pa.Super. 2006). This Court has explained that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into [the] needs and welfare of the child." ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa.Super. 2005). The trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." ***Id.*** Importantly, "[t]he mere existence of an emotional bond does not preclude the termination of parental rights." ***In re N.A.M.***, 33 A.3d 95, 103 (Pa.Super. 2011). Instead, the trial court "must examine the status of the bond to

determine whether its termination would destroy an existing, necessary and beneficial relationship." ***Id.*** (internal quotation marks and citation omitted).

Here, the trial court found that Child was "thriving and developmentally on target due to the attention provided by his foster parents." 1925(a) Op. at 8. It found Child was "in a good, stable home and has bonded well with the potential adoptive parents." ***Id.*** It concluded the termination of [Mother's] parental rights is in the best interests of [Child]." ***Id.***

The record supports the trial court's factual findings and it did not err as a matter of law or abuse its discretion in finding termination would best meet Child's interests under Section 2511(b). The testimony established that Child bonded with his foster parents and that he was thriving in their care. Further, Mother has had minimal contact with Child during Child's life.

We agree with counsel that the issues raised in counsel's ***Anders*** brief are wholly frivolous. Moreover, after an independent review of the record, we conclude that no other non-frivolous issue exists. Therefore, we grant counsel's petition to withdraw and affirm the decree terminating Mother's parental rights.

Petition to withdraw as counsel granted. Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

- 12 -

Date:  10/18/2019